UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RENALDO JOHN SONSINI, II | : | CIVIL NO: 1:20-CV-00392 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| LEBANON COUNTY, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## **<u>MEMORANDUM OPINION</u>**

## I.  Introduction.

Claiming that his rights were violated in numerous ways while he was a prisoner at the Lebanon County Correctional Facility, the plaintiff, Renaldo John Sonsini, II, has sued 22 defendants as well as an undetermined number of John and Jane Doe defendants.  Currently pending is a motion to dismiss filed by fourteen of the defendants.  For the reasons discussed below, we will grant in part and deny in part that motion to dismiss.  We will also dismiss without prejudice the other defendants who have not been served.  And we will grant Sonsini leave to file a second amended complaint.

## II.  Background and Procedural History.

Sonsini began this case in the Court of Common Pleas of Lebanon County, Pennsylvania.  On March 6, 2020, those defendants who had been served removed the case to this court pursuant to 28 U.S.C. § 1441(a).

Sonsini had previously filed in this court a complaint identical to the one in this case. *See Sonsini v. Lebanon County*, 1:19-CV-02232 (M.D. Pa.).  During a conference call with the parties on March 23, 2020, we discussed why Sonsini had two identical pending cases, and Mr. Sonsini agreed that he would dismiss *Sonsini v. Lebanon County*, 1:19-CV-02232 (M.D. Pa.), and proceed with this case. Sonsini later voluntarily dismissed *Sonsini v. Lebanon County*, 1:19-CV-02232 (M.D. Pa.).

On May 14, 2020, Sonsini filed an amended complaint in this case naming the following defendants: (1) Lebanon County, Pennsylvania; (2–4) Robert J. Phillips, William Ames, and Jo Ellen Litz, Lebanon County Commissioners; (5) Jamie Wolgemuth, Lebanon County Administrator; (6) Robert J. Karnes, the Warden of the Lebanon County Correctional Facility ("LCCF"); (7) Anthony J. Hauck, Deputy Warden for Treatment at the LCCF; (3) Jacqueline Matias; former LPN Medical Supervisor at the LCCF; (9) Brenda Cresini, former Business Manager at the LCCF; (10) Eric G. Folton, Culinary Supervisor at the LCCF; (11) Correctional Officer Kane, a culinary assistant at the LCCF; (12) Dr. Pevin

Powers, a former contract psychiatrist at the LCCF; (13) Sarah Ardire, a former

contract psychologist at the LCCF; (14) Rebecca Davis, a correctional counselor at

the LCCF; (15) John Santoni; a former sergeant at the LCCF; (16) Alexa Loyola, a

correctional officer at the LCCF; (17) Ahmed Nasr, a correctional officer at the

LCCF;[1] (18) Angela Garbaz, a former nurse at the LCCF; (19) Roberta Barrette, a

nurse at the LCCF; (20) Tammy (last name unknown), a nurse or former nurse at

the LCCF; (21) Officer Eby, a correctional officer at the LCCF; and (22) Timothy

Clements, former Deputy Warden of Operations at the LCCF. *Doc. 12* at 1–3,

¶¶ 1–22.  Sonsini also names as John/Jane Does defendants an unspecified number

of "unknown nurses/medical staff" and "unknown corrections officers." *Id*. at 3,

¶¶ 23–24.  He names the defendants in both their official and individual capacities.

*Id*. at 4.

Although Sonsini is currently incarcerated at the State Correctional

Institution at Greene, his claims arise from his confinement at the LCCF from

October 13, 2016, to March 25, 2017. *Id*. at 17, ¶ IV.A.  He alleges the following

facts in his amended complaint.

Sonsini is serving a one-to-five year sentenced imposed by the Court of

Common Pleas of Lebanon County. *Id*. at 4, ¶¶ I.A., I.B.  On October 13, 2016, he

---

[1]  In his amended complaint, Sonsini identified this defendant as "Nasar/Nasir." *Doc. 12* at 2.  The defendants identify this defendant as Ahmed Nasr. *Doc. 14* at 1.

was admitted to the LCCF from the State Correctional Institution at Camp Hill

("SCI Camp Hill"). *Id*. at 6, ¶ IV.1.

*Housing Assignment and Medical Issues.*

Upon his admission to the LCCF, Sonsini informed the intake correctional

officer on the 8-4 shift about his "medical disability/restriction(s)" regarding his

housing assignment. *Id*. Stating that Sonsini would be speaking to someone from

the medical department later, the intake officer refused to listen to Sonsini's

concerns regarding his housing assignment. *Id*.

Later that day, Sonsini spoke to defendant Garbaz about his "medical

disability/restriction(s)" with regard to his housing assignment and with regard to

his dietary restrictions. *Id*. at 6, ¶ IV.2. Garbaz said she would check Sonsini's

medical file that was transferred with him. *Id*. Garbaz gave Sonsini two "Special

Needs Requisition Slips." *Id*. at 6, ¶ IV.3. One of those slips dealt with Sonsini's

dietary restrictions, and it stated, "no chicken, and no fish," and "d/t allergies

documented" by SCI Camp Hill. *Id*. The other slip stated "bottom bunk status per"

SCI Camp Hill. *Id*. Garbaz initialed those slips and dated them October 13, 2016.

*Id*. After Sonsini pointed out that Garbaz had not included "no turkey and no

pork" on the dietary slip, Garbaz responded that the LCCF does not serve pork and

4

it is serves turkey only on Thanksgiving. *Id*.  Sonsini also told Garbaz that he cannot "navigate stairs per bottom/current/Level tier status." *Id*.

After speaking with Garbaz, Sonsini was sent to a block located downstairs, where he was assigned a top bunk. *Id*. at 7, ¶ IV.4.  Sonsini explained to an unknown correctional officer on that block that he should not be housed there, but instead he should be housed in the infirmary, the Medical Housing Unit, or even the Restricted Housing Unit. *Id*.  He asked the officer to contact someone. *Id*.  But even though Sonsini showed the officer "the pink slip for the bottom bunk status," the officer ignored Sonsini's pleas for a different housing assignment. *Id*.  Sonsini was then told that "quarantines" were to report upstairs to the gym for recreation and showers. *Id*. at 7, ¶ IV.5.

At about 5:15 p.m. on October 13, 2016, Sonsini slipped and fell on a puddle of water in the gym. *Id*. at 7, ¶ IV.5.A.  According to Sonsini, the culinary department stores items in the gym and staff from that department as well as the correctional officers assigned to the control station are responsible for ensuring that the area is safe. *Id*. at 9, ¶¶ IV.5.G, 5.H.  After other inmates informed staff that Sonsini fell, unknown corrections officers responded and alerted the medical department. *Id*. at 7, ¶ IV.5.B.  Unknown medical staff arrived with a wheelchair. *Id*.  Sonsini told the medical staff and the corrections officers that there was something wrong with his knee/leg and that he was in severe pain. *Id*.  Staff helped

Sonsini into the wheelchair and took him to the medical department where it was determined that he should go to the hospital. *Id*.  From the medical department, Sonsini was wheeled down to the intake area, and two unknown corrections officers escorted Sonsini down two flights of stairs and across a parking lot to a transport van. *Id*. at 7, ¶ IV.5.C.

The unknown corrections officer who transported Sonsini to the hospital made Sonsini get into the van and then out of the van at the hospital on his own. *Id*. And even though the officer was aware of Sonsini's injury and the pain that he was experiencing, the officer made Sonsini walk into the emergency room of the hospital. *Id*. at 7–8, ¶ IV.5.C.

X-rays taken at the hospital showed that Sonsini had bone spurs around his right knee cap. *Id*. at 8., ¶ IV.5.D.  According to Sonsini, he already had muscle loss and nerve damage, and the slip and fall in the gym set back the progress he had made during the physical therapy that he had endured just to be able to bend his knee after a prior surgery. *Id*.  Although hospital staff wanted to prescribe Sonsini a knee brace, the unknown correctional officer said Sonsini would not be allowed to keep a knee brace. *Id*.  The officer also said that the LCCF Medical Supervisor (defendant Matias) would not allow a compression sleeve or ace bandage, and she may not allow or approve pain medication. *Id*.  The hospital

prescribed Sonsini Ibuprofen 600 mg. to be taken four times a day for pain and discomfort. *Id*.

When Sonsini returned to the LCCF from the hospital, he was not helped up the two flights of steps to the intake area, and unknown staff ordered him to return to his original housing assignment. *Id*. at 8, ¶ IV.5.E.  Staff refused his pleas to be reassigned to a different housing unit due to his injuries. *Id*.

Sonsini returned to his cell where he was assigned the top bunk. *Id*. at 8, ¶ IV.5.F.  But because he could not get into his bunk, he pulled his mattress to the floor to sleep. *Id*.  An unknown correctional officer doing rounds later ordered Sonsini to get off the floor and into his bunk or else receive a misconduct report. *Id*.  According to Sonsini, "[t]his caused severe bruises on [his] hips, abdomen, legs and arms." *Id*.  And Sonsini, who had problems sitting, standing, and walking, did not receive his medication for days. *Id*.

On the 12-8 shift on November 10, 2016, Sonsini did not receive his psychiatric and pain medications. *Id*. at 9, ¶ IV.7.  On November 14, 2016, in response to Sonsini's inquiry about why he was not getting his medication, an unknown corrections officer said it was a holiday and medical staff was not available. *Id*.  Sonsini asked the officer if he had medical training since he was handing out medications, and the officer explained that nurses make up the medication packets to be handed out. *Id*.  Sonsini told the officer that he had not

had his medication for four days, and he asked the officer to check with the medical department about his medication, but the officer said there was nothing he could do. *Id*. The officer also refused Sonsini's request for some pain medication for the severe pain he was experiencing in his knee and leg. *Id*.

Sonsini wrote to defendant Matias numerous times about not receiving his medication. *Id*. at 9, ¶ IV.7.A. She responded that Sonsini's Zoloft "was discontinued due to refusals on November 10, 2016" and that Sonsini should submit another sick-call request for his Ibuprofen prescription to be refilled. *Id*.

Sonsini submitted requests and sick-call requests to have his medications refilled. *Id*. at 9, ¶ IV.7.B. And, on November 21, 2016, he filed a grievance complaining about medical negligence. *Id*. Sonsini complained that Dr. Yocum was to review his x-rays and notify him of a course of action, but he never saw or heard from Dr. Yocum. *Id*. Defendant Matias denied Sonsini's grievance. *Id*. Sonsini then filed an appeal of that denial to defendant Karnes, who never responded. *Id*. at 10, ¶ IV.7.C, 12, ¶ IV.11. Sonsini does not have a copy of his appeal to Karnes because defendant Davis would not allow him to make a copy prior to filing. *Id*. at 10, ¶ IV.7.C.

On December 13, 2016, Sonsini submitted a sick-call request to be seen by Dr. Powers or the "Psych. Department to be seen for depression, anxiety, P.T.S.D, etc. and to have [his] medication reissued." *Id*. at 10, ¶ IV.7.D. This was not

Sonsini's first such request.  According to Sonsini, "[a]s of December 13, 2016, [he had] submitted four (4) requests to Dr. Powers [and] Sarah Ardire, three (3) to medical supervisor-LPN, Jacqueline Matias and Deputy Warden of treatment-Anthony Hauck." *Id*. at 10, ¶ IV.7.E.  On December 16, he submitted another request to Dr. Powers about being seen and having his medication reissued. *Id*.

On December 28, 2016, Sonsini received a response from defendant Ardire to a request he has sent a month earlier; the response stated, "We will schedule you to meet with Dr. Powers, as soon as we can." *Id*. at 10, ¶ IV.7.D.  Also on December 28, 2016, Sonsini asked defendant Garbaz about the status of his medications and his sick-call requests and about copying his medical file. *Id*. at 10, ¶ IV.7.F.  Garbaz told him to contact defendant Matias. *Id*.  Sonsini explained that he had done so numerous times and Matias either does not respond or does not correct the issues. *Id*.

On December 29, 2016, Sonsini wrote to defendant Matias about obtaining a copy of his medical file, which he wanted so that he had proof regarding his requests and the denial of those requests by staff, including defendant Hauck. *Id*. at 10, ¶ IV.7.G.  Sonsini also asked his counselor—defendant Davis—for copies of his sick-call requests. *Id*. at 11. ¶ IV.7.H.  Davis denied that request, and she refused to help Sonsini obtain his medical records. *Id*. at 11, ¶ IV.7.H., 7.I.  She also denied Sonsini's request to personally deliver one of his request slips to

9

defendant Matias. *Id*. at 11, ¶ IV.7.I.  Davis did, however, provide Sonsini an

envelope for his paperwork, and she said she would drop the envelope in Matias's

box. *Id*.  According to Sonsini, defendant Matias did not respond to any of his

requests after he submitted his grievance on November 21, 2016. *Id*.

On January 23, 2017, Sonsini "wrote a Letter(s) to the county

commissioners, Mr. Phillips, Mr. Ames, and Mrs. Litz and county administrator-

Mr. Wolgemuth about the issues taking place at the Lebanon County Correctional

Facility." *Id*. at 11, ¶ IV.8.  He never received a response. *Id*. at 11, ¶ IV.8, 12,

¶ IV.11.

Later in January 2017, Sonsini sent a request to defendant Hauck requesting

that defendant Matias call him to the medical department so that he could have his

medical file copied. *Id*. at 11, ¶ IV.7.J.  Hauck responded, "We are not copying

your medical file unless we receive a court order to do so signed by a judge." *Id*.

On February 16, 2017, defendant Barrette refused to give Sonsini his

medication, stating that it was too early. *Id*. at 11, ¶ IV.9.  Sonsini explained that he

was to get his medication every four to six hours, that his last dose was at 12:12

p.m., that it was now 5:35 p.m., and that he was in pain. *Id*.  Nurse Barrette just

walked away. *Id*.

According to Sonsini, from March 9, 2017, to March 24, 2017, he asked the

nurses every day for medication, but he never got any. *Id*. at 12, ¶ IV.10.C.  On

March 20, 2017, he asked defendant Nurse Tammy for a pain reliever for the pain and discomfort he was having. *Id*. at 12, ¶ IV.10.D.  She denied that request, and she told Sonsini that if he wanted pain medication, he should submit a sick-call request to have it reinstated. *Id*.

According to Sonsini, the events at the LCCF between October 13, 2016, and March 25, 2017, "caused complications with his P.T.S.D., mental health condition, increased depression, stress and unnecessary pain, swelling and discomfort in his knee, leg and back, and other numerous injuries as a result of the accident and subsequent housing issues." *Id*. at 13, ¶ IV.11.B.

*Cell Search and Disciplinary Proceeding.*

On March 8, 2017, Sonsini's cell was searched, and a packet of medication with his name on it was found. *Id*. at 12, ¶ IV.10.  The medication was the Ibuprofen that Sonsini had been prescribed, which was to be taken as needed four times a day, every four to six hours. *Id*.  Sonsini received a misconduct report for having the medication in his cell. *Id*.  According to Sonsini, he had the medication in his cell because the medical staff was inconsistent about giving him his medication. *Id*.  Sonsini was taken to the Segregated Housing Unit for pre-hearing confinement, where he was assigned a top bunk. *Id*. at 12, ¶ IV.10.A.

A couple of days later, defendant Hauck presided over Sonsini's disciplinary hearing. *Id*. at 12, ¶ IV.10.B.  Hauck found Sonsini guilty of possession of

11

contraband, sentenced him to 20 days in the Segregated Housing Unit, and charged him a $25 administrative fee. *Id.*

*Dietary Issues.*

In addition to complaining about his housing issues and medical care, Sonsini complains about the diet that he received while at the LCCF from October 13, 2016, to March 25, 2017. As set forth above, when he first arrived at the LCCF, defendant Garbaz gave him a Special Needs Requisition Slip regarding his diet that stated, "no chicken, and no fish," and "d/t allergies documented" by SCI Camp Hill. *Id.* at 6, ¶ IV.3. He contends, however, that defendants Folton and Kane refused to provide "an alternative or bland tray[.]" *Id.* at 13, ¶ IV.12.A.

Sonsini received an "alternative tray" for lunch on February 7, 2017, but for dinner that same day he was refused such a tray. *Id.* at 14, ¶ IV.12.B. More specifically, after a correctional officer called for an "alternative or bland tray" for Sonsini, defendant Folton told the officer that if Sonsini did not eat the food on the tray he had been given, "it was on [him]." *Id.* Sonsini then asked two unknown correctional officers to grab him anything from the kitchen that did not have meat so that he could eat something. *Id.* The officers, however, said Sonsini "was burnt." *Id.*

On February 16, 2017, Sonsini spoke to defendant Santoni about his dietary status. *Id.* at 14, ¶ IV.12.C. Sonsini asked Santoni to speak to defendant Folton

12

and/or defendant Kane about providing him with an "alternative or bland tray" because of his dietary restrictions. *Id*. Santoni replied that he would not speak to anyone about a special tray. *Id*. And after Sonsini told Santoni that he was violating his First and Eighth Amendment rights, Santoni declared, "Your rights are not being violated because you're receiving food and . . . you do not get a say in what you get to eat." *Id*. at 14, ¶ IV.12.D. Sonsini asked Santoni to at least have the culinary staff not put meat on his tray, but again Santoni refused. *Id*. Two unknown correctional officers were working on the control block and defendant Eby was working in central control when Sonsini was not provided with an "alternative or bland tray" on February 17, 2017. *Id*. at 14, ¶12.C.

During the first week of March 2017, unknown nurses called Sonsini to the medical department, and they told him that his alternative meal will be a small can of Ensure that will be given to him every morning at about 3:00 a.m. at a cost to him of $3.00 per can. *Id*. at 14, ¶ IV.12.F. According to Sonsini, being woken up at 3:00 a.m. interfered with his sleep and caused him to suffer physical, mental, and emotional distress. *Id*. at 15, ¶ IV.12.G. Sonsini received 22 cans of ensure, but he was not provided with three cans while he was in the SHU. *Id*. at 14, ¶ IV.12.F.

According to Sonsini, defendants Matias, Folton, Karnes, Hauck, Phillips, Ames, Litz, and Wolgemuth, as well as other officers and staff, "were notified

and/or aware of my dietary restrictions of not eating fowl, fish or pork." *Id*. at 13,

¶ IV.12.  But, Sonsini asserts, no one stepped in and did anything. *Id*. at 14,

¶ IV.12.E.  And because the defendants failed to provide him a diet in accord with

his dietary restrictions, Sonsini was able to eat only approximately 215–220 of the

480 meals served during his five months at the LCCF. *Id*. at 13, ¶ IV.12.A.  This

caused him "depression, fatigue, stress, vomiting, nausea and weight loss." *Id*.


   *Legal Mail/Phone Call.*

   Sonsini also complains about problems with his mail when he was at the

LCCF.  On December 15, 2016, Sonsini sent letters to the Lebanon County Clerk

of Court and a magisterial district judge, and on December 30, 2016, he sent letters

to Attorney Brian Deiderick and the Lebanon County Clerk of Court. *Id*. at 15,

¶ IV.13, 13.A.  According to Sonsini, based on a docket sheet of his case, those

letters were never received by the intended recipients, although other letters that he

sent to Deiderick and the County Clerk of Court on other dates were received. *Id*.

15, ¶ IV.13, 13.A, 13.C.  Sonsini concludes that this shows that the letters at issue

were not sent through the "inner-office mail system, which is standard protocol for

all mail addressed to the courthouse." *Id*. at 15, ¶ IV.13.C.  Sonsini asserts that he

is not the only person to which this happened. *Id*.  And he suggests that there were

also problems with mail sent through the postal service. *Id*.  He contends that

"[s]omehow, someway, or by someone legal mail is being lost, or destroyed . . . ." *Id*.

Sonsini asked Correctional Officer Mease who was responsible for the outgoing legal mail, and Mease said that "six (6) block" and the LCCF office manager are responsible for all "inner-office (Legal mail)." *Id*. at 16, ¶ IV.13.D. At that time, defendant Cresini held the position of LCCF office manager, and she was responsible for all legal mail going to the courthouse. *Id*.  In February 2017, Sonsini requested that defendant Cresini provide him a record of his outgoing correspondence. *Id*. at 16, ¶ IV.13.F.  She provided him with dates for letters Sonsini had sent; those dates did not include December 15, 2016, or December 30, 2016, the dates Sonsini alleges that he sent letters that the intended recipients never received. *Id*.

On February 6, 2107, Sonsini wrote to defendant Davis requesting to be allow a call to Attorney Deiderick. *Id*. at 16, ¶ IV.13.E.  The next day, Davis responded: "We do not do personal calls." *Id*.  According to Sonsini, the call "was to [his] attorney for legal purposes, not personal." *Id*.

Sonsini contends that the actions and inaction of the staff at the LCCF constituted "a continued campaign of harassment, create[d] governmental interference, clear due process violations, civil rights violations, denial of legal means/remedy, right to access to the courts and other constitutional legal

15

violations." *Id*. at 16, ¶ IV.13.G.  And, according to Sonsini, this affected his legal case and influenced the amount of time he is incarcerated as well as causing him physical, emotional, and mental suffering. *Id*.

Sonsini brings federal claims as well as state law claims.  More specifically, he brings claims under 42 U.S.C. § 1983 for purported violations of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  He also brings claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*., and the Rehabilitation Act ("RA"), 29 U.S.C. § 701 *et seq*.  He brings state law claims for premises liability, negligence, civil conspiracy, and violations of the Pennsylvania Constitution.  Sonsini seeks injunctive relief and attorney fees as well as nominal, compensatory, and punitive damages. *Id*. at 23–24.

Sonsini and the defendants who have been served in this case—defendants Lebanon County, Phillips, Ames, Litz, Wolgemuth, Karnes, Hauck, Folton, Loyola, Eby, Kane, Davis, Nasr, and Barrette ("the Lebanon County Defendants")[2]—consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned.  Currently pending is a motion to dismiss filed by the Lebanon County Defendants.  That motion has been fully briefed.  For the reasons discussed below, we will grant in part and deny

---

[2]  Because these defendants refer to themselves as the Lebanon County Defendants, *see doc. 14* at 1, we will also refer to them as such.

in part that motion.  We will also dismiss the unserved defendants.  And we will grant Sonsini leave to file a second amended complaint.

### III.  Pleading and Motion-to-Dismiss Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's

claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  In practice, consideration of the legal sufficiency of a complaint

entails a three-step analysis:

> First, the court must "tak[e] note of the elements a
> plaintiff must plead to state a claim."  Second, the court should
> identify allegations that, "because they are no more than
> conclusions, are not entitled to the assumption of truth."
> Finally, "where there are well-pleaded factual allegations, a
> court should assume their veracity and then determine whether
> they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and

citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and

"'however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v.*

*Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege

sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina,*

*Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV.  Discussion.

Federal Rule of Civil Procedure 10(b) provides, in part, that "[i]f doing so

would promote clarity, each claim founded on a separate transaction or occurrence

. . . must be stated in a separate count or defense."  Here, Sonsini has not set forth

his claims in separate counts, and his failure to do so makes it difficult to follow

his amended complaint.  Nevertheless, construing the amended complaint liberally

19

because Sonsini is proceeding *pro se*, we have done our best to identify his claims as to the Lebanon County Defendants.

The amended complaint contains both federal and state law claims.  The Lebanon County Defendants focus mainly on the federal claims, and we start with those claims.

### A.  Federal Claims.

#### 1.  42 U.S.C. § 1983 Claims.

In his amended, Sonsini claims that the defendants violated his First, Fifth, Sixth, Eighth, and Fourteenth Amendment rights.  His constitutional claims are properly brought under 42 U.S.C. § 1983.  "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.*  To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

### a. Lebanon County.

Lebanon County contends that Sonsini has failed to state a viable § 1983 claim against it.  We agree.

A municipality, such as Lebanon County, cannot be held liable under 42 U.S.C. § 1983 for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)). "[A] § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  One way for a plaintiff to present a claim against a municipality is to allege "that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id.*  Another way for a plaintiff to present a claim against a municipality is to allege that his injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

To plead a claim against a municipality under the policy-or-custom strand of municipal liability, "a plaintiff must allege that 'a [local] government's policy or custom . . . inflict[ed] the injury' in question." *Estate of Roman*, 914 F.3d at 798 (quoting *Monell*, 436 U.S. at 694).  "'Policy is made when a decisionmaker

possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id*. (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

"To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  "Although a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss." *Estate of Roman*, 914 F.3d at 798.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id*.

Here, Sonsini has not alleged facts from which it can reasonably be inferred that a policy or custom of Lebanon County violated his rights.  In fact, Sonsini alleges nothing in this regard.

Another way for a plaintiff to present a claim against a municipality is to allege that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest*, 930 F.3d at 105 (quoting *Estate of Roman*, 914 F.3d at 798).  "The latter avenue arose in the

failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its . . . officers." *Id*.

A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline "need not allege an unconstitutional policy." *Estate of Roman*, 914 F.3d at 798.  Rather, he must show that the municipality's failure to train, supervise, or discipline "its employees 'reflects a deliberate or conscious choice.'" *Id*. (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)).  In this regard, the plaintiff must show "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106.  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id*.

Here, Sonsini has not alleged facts from which it can reasonably be inferred that a failure or inadequacy of training, supervision, or discipline by Lebanon County caused a violation of his rights.  Again, Sonsini alleges nothing in this regard.

In sum, the amended complaint fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted against Lebanon County.

### b. The Lebanon County Defendants in their Official Capacities.

In addition to naming Lebanon County as a defendant, Sonsini names the Lebanon County Defendants as defendants in their official capacities.

Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell,* 436 U.S. at 690, n. 55.  In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra,* local government units can be sued directly for damages and injunctive or declaratory relief." *Id.* at 167 n.14.  "[B]ecause official capacity claims against an individual defendant are duplicative of claims brought against a municipality, 'courts sitting in the Third Circuit have dismissed defendants sued in their official capacity when the same claims are made against the municipality.'" *Rankin v. Majikes*, No. 3:CV-14-699, 2014 WL 6893693, at *6 (M.D. Pa. Dec. 5, 2014) (quoting *Dubas v. Olyphant Police Dep't*, No. 3:11-CV-1402, 2012 WL 1378694, at *4 (M.D. Pa. Apr. 20, 2012)); *see also Whitehurst v. Lackawanna Cty.*, No. 3:17-CV-00903, 2020 WL 6106616, at *7 (M.D. Pa. Mar. 5, 2020)

24

(recommending that claims against county defendants in their official capacities be dismissed as redundant "pursuant to the Court's inherent authority to control its docket and avoid duplicative claims" where county is also named as a defendant), *report and recommendation adopted*,  2020 WL 6083409 (M.D. Pa. Oct. 15, 2020).

Here, given that Sonsini named Lebanon County in his amended complaint, the 42 U.S.C. § 1983 claims against the Lebanon County defendants in their official capacities are redundant of the claims against Lebanon County.  Moreover, as set forth above, the amended complaint fails to state a § 1983 claim upon which relief can be granted against Lebanon County.  Thus, is necessarily follows that the amended complaint fails to state a § 1983 claim upon which relief can be granted against the Lebanon County Defendants in their official capacities.

The Lebanon County Defendants have not moved to dismiss the § 1983 claims against them in their official capacities.  But the court has the authority "on its own" to dismiss a claim brought by a prisoner with respect to prison conditions under federal law for failure to state a claim upon which relief can be granted. *See* 42 U.S.C. § 1997e(c)(1).  Pursuant to that authority, we will dismiss the § 1983 claims against the Lebanon County Defendants in their official capacities.[3]

---

[3] We will dismiss the § 1983 claims on this basis only against the Lebanon County Defendants in their official capacities.  Below, we discuss the § 1983 claims

### c. The Lebanon County Defendants in their individual/personal capacities.

The individual Lebanon County Defendants contend that the § 1983 claims against them should be dismissed.

### (i).  Defendants Phillips, Ames, Litz, and Wolgemuth.

Defendants Phillips, Ames, Litz, and Wolgemuth contend that the amended complaint fails to state a 42 U.S.C. § 1983 claim against them because Sonsini has not alleged that they were personally involved in the alleged violation of his constitutional rights.

"In advancing any § 1983 claim against prison officials, a plaintiff may not rely solely on a *respondeat superior* theory of liability." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).  "Rather, a plaintiff must aver facts to show the defendants' personal involvement in the alleged misconduct." *Id.*  In other words, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  And so, a constitutional deprivation cannot be premised merely on the fact that the defendant was a supervisor when the incidents set forth in the complaint occurred. *See Alexander v. Forr*, 297 F. App'x 102, 104–05 (3d Cir. 2008).  Rather, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead

---

against the individual Lebanon County Defendants in their individual or personal capacities.

that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Third Circuit has "recognized that 'there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.'" *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).

"Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997) (footnote omitted), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

Defendants Phillips, Ames, Litz, and Wolgemuth construe the § 1983 claims against them as claims that they failed to respond to Sonsini's grievances.  And they cite *Castillo v. Does*, No. 3:15-CV-00910, 2016 U.S. Dist. LEXIS 129018 (M.D. Pa. Sep. 20, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 143400 (M.D. Pa. Oct. 17, 2016), for the proposition that an official's failure to respond to an inmate's letter or grievance is insufficient to impose liability.  In that case, the court stated that "neither the filing of a grievance or participation in the 'after-the-fact' review of a grievance is sufficient to establish personal involvement." *Id*. at *23 (M.D. Pa. Sep. 20, 2016).

It is true that "[t]he 'after-the-fact' review of a grievance, or an inmate's dissatisfaction with a grievance response, do not establish the involvement of officials and administrators in any underlying constitutional deprivation." *Stuart v. Murray*, No. 1:18-CV-0430, 2020 WL 6710209, at *6 (M.D. Pa. Nov. 16, 2020); *see also Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) ("Although the complaint alleges that Appellees responded inappropriately to Brooks's later-filed grievances about his medical treatment, these allegations do not establish Appellees' involvement in the treatment itself.").  But in some circumstances, a grievance may be enough to put an official on notice of an alleged continuing violation of a prisoner's rights, and, therefore, may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of

28

a prisoner's claims. *See Johnson v. Wireman*, 809 F. App'x 97, 100, 100 n.20 (3d Cir. 2020) (refusing to dismiss two defendants for lack of personal involvement in claims that the prisoner's religious rights were being violated based, in part, on their responses to his grievances; noting that the prisoner did not merely allege that the defendants "denied the grievances, which would amount to an impermissible *respondeat superior* theory of liability"; and suggesting that the grievances and responses were enough to sufficiently allege actual knowledge and acquiescence); *Parkell*, 833 F.3d at 337 n.14 ("Our oft-cited holding in *Rode v. Dellarciprete,* 845 F.2d 1195, 1208 (3d Cir. 1988) that the mere <u>filing</u> of a grievance does not show actual knowledge by a supervisor is not applicable, as Phelps's letters show that he actually had reviewed the grievances."); *Diaz v. Palakovich,* 448 F. App'x 211, 215 (3d Cir. 2011) (holding that summary judgment for the defendants was improper where the defendants had knowledge through the grievance process of an alleged ongoing practice of improper handling of the plaintiff's mail and the defendants failed to take corrective action); *Sutton v. Rasheed*, 323 F.3d 236, 249–50 (3d Cir. 2003) (concluding that summary judgment was not warranted as to a defendant who received from the prisoner a letter, styled as a final appeal of a grievance, who referred the issue to another, and who then responded by denying the grievance appeal); *Atkinson v. Taylor,* 316 F.3d 257, 270-271 (3d Cir. 2003) (refusing to hold as a matter of law that correspondence or conversations with

29

prison officials do not constitute sufficient evidence of actual knowledge and acquiescence).

Here, Sonsini alleges that on January 23, 2017, he "wrote a Letter(s) to the county commissioners, Mr. Phillips, Mr. Ames, and Mrs. Litz and county administrator-Mr. Wolgemuth about the issues taking place at the Lebanon County Correctional Facility." *Doc. 12* at 11, ¶ IV.8.  He never received a response. *Id.* at 11, ¶ IV.8, 12, ¶ IV.11.  He also alleges that defendants Phillips, Ames, Litz, and Wolgemuth, among others "were notified and/or aware of my dietary restrictions of not eating fowl, fish or pork." *Id.* at 13, ¶ IV.12.  And Sonsini claims that these defendants "[d]id not intervene when notified about conditions and treatment." *Id.* at 17–18, ¶¶ IV.C.1–C.5.

Although allegations that officials were notified about an ongoing constitutional violation but failed to intervene to stop the violation may in some circumstance be enough to allege personal involvement, here Sonsini's allegations in this regard are too general to do so.  Given Sonsini's allegation that he "wrote a Letter(s)" to Phillips, Ames, Litz, and Wolgemuth, *id.* at 11, ¶ IV.8, it is not clear whether he wrote only one letter or more than one letter.  It is also not clear to whom specifically the letter or letters were sent.  Further, although Sonsini alleges that he wrote about "the issues taking place at the Lebanon County Correctional

Facility," *id.*, Sonsini complains about many issues that arose at the LCCF, and he does not specify as to which issues he wrote to these defendants.

Moreover, "[a]cquiescence requires both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor." *Ali v. Benning*, No. 1:18-CV-1068, 2020 WL 1233576, at *3 (M.D. Pa. Mar. 13, 2020). Here, Sonsini alleges that defendants Phillips, Ames, Litz, and Wolgemuth allowed violations of the Constitution to occur at the LCCF, and, he contends, "[t]his includes but not limited to, civil conspiracy, negligence, Americans with Disabilities Act (ADA)." *Doc. 12* at 17–18, ¶¶ IV.C.1–C.5. But Sonsini does not allege anything regarding whether defendants Phillips, Ames, Litz, and Wolgemuth had direct supervisory authority over the staff at the LCCF who allegedly violated his rights, and it is not clear from his amended complaint exactly for which of his many alleged violations he is seeking to hold these defendants liable. Thus, we conclude that the amended complaint fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted against defendants Phillips, Ames, Litz, and Wolgemuth.

### (ii).  Defendant Karnes.

Defendants Karnes also contends that the § 1983 claims against him should be dismissed because Sonsini has not alleged that he was personally involved in the alleged violation of his constitutional rights. Karnes also relies on *Castillo*,

2016 U.S. Dist. LEXIS 129018, for the proposition that an official's failure to respond to an inmate's letter or grievance is insufficient to impose liability.  But, as set forth above, a grievance may be enough to put an official on notice of an alleged continuing violation of a prisoner's rights, and, therefore, may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims.

Sonsini alleges that in December of 2016, he appealed the denial of his grievance concerning "medical negligence" to defendant Karnes, but defendant Karnes did not respond. *Doc. 12* at 9, ¶ IV.7.B, 10, ¶ IV.7.C, 12, ¶ IV.11.  He also alleges that defendant Karnes and others "were notified and/or aware of [his] dietary restrictions of not eating fowl, fish or pork." *Id*. at 13, ¶ IV.12.  And more generally, he alleges that Karnes and other "were made aware of [his] condition(s)." *Id*. at 14, ¶ IV.12.E.  Sonsini further contends that Karnes "[d]id not intervene when notified of conditions and treatment." *Id*. at 18, ¶ IV.C.6.

Here again, we conclude that Sonsini's allegations are too general to show personal involvement in the alleged violations of Sonsini's constitutional rights. Although Sonsini alleges that he appealed the denial of his grievance concerning "medical negligence" to defendant Karnes, negligence is not enough to show a constitutional violation. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (holding that deliberate indifference, which is a required element of an Eighth Amendment

claim, "describes a state of mind more blameworthy than negligence"); *Daniels v.*

*Williams*, 474 U.S. 327, 328 (1986) (holding a state official's negligent act

"causing unintended loss of or injury to life, liberty, or property" does not

implicate the Due Process Clause).  And although Sonsini alleges that Karnes was

"notified and/or aware" of his dietary restrictions, in addition to failing to allege

how Karnes was notified or how he became aware of his dietary restrictions,

Sonsini fails to allege that Karnes was aware that he was not receiving a diet in

accordance with those restrictions.  And the amended complaint does not contain

sufficient factual allegations to show that defendant Karnes was personally

involved in any of the other alleged violations of Sonsini's constitutional rights.

In sum, Sonsini has not alleged facts from which it can reasonably be

inferred that defendants Karnes was personally involved in the alleged violation of

his rights. Thus, we conclude that the amended complaint fails to state a 42 U.S.C.

§ 1983 claim upon which relief can be granted against defendant Karnes.

### (iii).  Defendant Hauck.

Sonsini alleges that defendant Hauck presided over his disciplinary hearing,

found him guilty of possession of contraband, sentenced him to 20 days in the

Segregated Housing Unit, and imposed a $25 administrative fee. *Doc. 12* at 12,

¶ IV.10.B.  Sonsini fails to allege, however, what defendant Hauck did not or did

not do that allegedly violated his constitutional rights in connection with the disciplinary hearing.  Thus, the amended complaint fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted against defendant Hauck with respect to the disciplinary hearing.

Sonsini also alleges that defendant Hauck refused his request for a copy of his medical records.  Sonsini has not alleged, however, what constitutional provision Hauck violated or how he was harmed by Hauck failing to provide him a copy of his medical records. *See Hearns v. Johnson*, No. CV 16-3284 (JLL), 2016 WL 4690386, at *6 (D.N.J. Sept. 6, 2016) (observing that the court is not aware of a "federal constitutional right requiring that a state prisoner be provided with copies of his medical files upon request"); *Hetzel v. Swartz*, 909 F. Supp. 261, 263 (M.D. Pa. 1995) (finding due process claim that prisoner was denied a copy of his medical records meritless).  Thus, the amended complaint fails to state a 42 U.S.C. § 1983 claim upon which relief may be granted against defendant Hauck based on Hauck not copying Sonsini's medical records.

Defendant Hauck contends that any other § 1983 claims against him should be dismissed because Sonsini has not alleged that he was personally involved in the alleged violation of his constitutional rights.  As to Hauck, unlike with the other defendants discussed above, we conclude that although Sonsini's allegations are not a model of clarity, he has alleged enough to show that Hauck was aware

34

that Sonsini allegedly was not receiving medical care and medication and Hauck

failed to act to correct such.  In this regard, Sonsini alleges that on December 13,

2016, he submitted a sick-call request to be seen by Dr. Powers or the "Psych.

Department to be seen for depression, anxiety, P.T.S.D, etc. and to have [his]

medication reissued." *Doc. 12* at 10, ¶ IV.7.D.  This was not Sonsini's first such

request.  According to Sonsini, "[a]s of December 13, 2016, [he had] submitted

four (4) requests to Dr. Powers [and] Sarah Ardire, three (3) to medical supervisor-

LPN, Jacqueline Matias and Deputy Warden of treatment-Anthony Hauck." *Id*. at

10, ¶ IV.7.E.  On December 16, he submitted another request to Dr. Powers about

being seen and having his medication reissued. *Id*.  And, on December 29, 2016,

Sonsini wrote to defendant Matias about obtaining a copy of his medical file,

which he wanted so that he had proof regarding his requests and the denial of those

requests by staff, including defendant Hauck. *Id*. at 10, ¶ IV.7.G.  Construing the

amended complaint liberally, as we must because Sonsini is proceeding *pro se*, we

conclude that Sonsini has sufficiently alleged that Hauck was aware of an ongoing

denial of medical treatment to Sonsini and that by failing to act, he acquiesced in

that alleged failure to provide medical treatment.

Sonsini also alleges, as he did in connection with the other defendants, that

defendant Hauck was "notified and/or aware" of his dietary restrictions.  But again,

in addition to failing to allege how Hauck was notified or how he became aware of

his dietary restrictions, Sonsini fails to allege that Hauck was aware that he was not receiving a diet in accordance with those restrictions.  And the amended complaint does not contain sufficient factual allegations to show that defendant Hauck was personally involved in any of the other alleged violations of Sonsini's constitutional rights other than the denial of medical care.

In sum, the amended complaint alleges that defendant Hauck was personally involved in the alleged ongoing failure to provided him with medical care, but the amended complaint otherwise fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted against defendant Hauck.

### (iv).  Defendant Barrette.

Defendant Barrette, a nurse at the LCCF, contends that the amended complaint fails to state an Eighth Amendment claim against her upon which relief can be granted.

"An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  For a plaintiff to allege a viable Eighth Amendment medical claim, he must allege facts from which it can reasonably be inferred that the defendant acted with deliberate indifference to his serious medical needs. *Id.* at 104; *see also Groman v. Township of Manalapan,* 47 F.3d 628, 637 (3d Cir. 1995) ("Failure to provide medical care to a person in custody can rise to the level of a

constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs.").  This is a two-part inquiry: "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

A medical need is serious if it "has been diagnosed by a physician as requiring treatment" or if it "is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), *aff'd,* 649 F.2d 860 (3d Cir. 1981) (table)). Additionally, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (quoting *Estelle,* 429 U.S. at 103).  Further, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id.*

Deliberate indifference is a subjective standard. *Farmer*, 511 U.S. at 840. "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney,* 571 F.3d 318, 330

(3d Cir. 2009).  To act with deliberate indifference, the prison official must have known of the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it. *Farmer,* 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as a constitutional claim because medical malpractice is not a constitutional violation. *See id.* at 835 (holding that "deliberate indifference describes a state of mind more blameworthy than negligence")*; Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir. 2004) ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation."); *Singletary v. Pa. Dep't of Corr.,* 266 F.3d 186, 192 n. 2 (3d Cir. 2002) (noting that allegations of medical malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment).  Instead, deliberate indifference represents a much higher standard, one that requires "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse,* 182 F.3d at 197 (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

"Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d

Cir. 1993) (citations omitted).  And courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).  "Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim." *Caldwell v. Luzerne Cnty. Corr. Facility Mgmt. Employees*, 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010).

Thus,"[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic*, 854 F.3d at 227.  "Nonetheless, there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements." *Id*.

The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse,* 182 F.3d at 197.  The Third Circuit has also held that "[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose . . . violates the Eighth Amendment." *Atkinson,* 316 F.3d at 266.  "For instance, prison officials may not, with deliberate

39

indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition." *Palakovic*, 854 F.3d at 228 (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978). "Nor may 'prison authorities deny reasonable requests for medical treatment . . . [when] such denial exposes the inmate to undue suffering or the threat of tangible residual injury.'" *Id.* (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)). Thus, "[a] 'failure to provide adequate care . . . [that] was deliberate, and motivated by non-medical factors' is actionable under the Eighth Amendment, but 'inadequate care [that] was a result of an error in medical judgment' is not." *Parkell*, 833 F.3d at 337 (quoting *Durmer,* 991 F.2d at 69).

The amended complaint contains factual allegations regarding only one interaction Sonsini had with defendant Barrette.[4]  Sonsini alleges that on February

---

[4]  Sonsini also alleges:

> Roberta Barrette-Individual/Official Capacities, allowed and/or took part in violation(s) of the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania at L.C.C.F.  This includes but not limited to, civil conspiracy, negligence, Americans with Disabilities Act, Rehabilitation Act.  Did not intervene or rectify issues when notified. Refused/denied proper medical treatment/needs. Refused/denied adequate nutrition.  Denied Due Process.

*Doc. 12* at 20, ¶19.  These are legal conclusions, which we need not accept when deciding a motion to dismiss.  The only factual allegations in the amended complaint concerning defendant Barrette concern the one interaction on February 16, 2017, regarding Sonsini's medication.

16, 2017, defendant Barrette refused to give him his medication, stating that it was too early. *Doc. 12* at 11, ¶ IV.9.  Sonsini explained that he was to get his medication every four to six hours, that his last dose was at 12:12 p.m., that it was now 5:35 p.m., and that he was in pain. *Id.*  Nurse Barrette just walked away. *Id.*[5]

"[P]rofessional disagreement about the appropriate level of prescription pain medication" does not amount to deliberate indifference. *Parkell,* 833 F.3d at 339. Nor do isolated instances of delay in providing medication without more amount to deliberate indifference. *See Ayala v. Terhune*, 195 F. App'x 87, 91 (3d Cir. 2006) (concluding that "sporadic delays (not exceeding four days at any one time) in providing prescription medication to Ayala in 2002–2003, do not amount to deliberate indifference on the part of the named defendants"); *Spencer v. Varano*, No. 3:17-CV-2158, 2018 WL 3352655, at *8 (M.D. Pa. July 9, 2018) (observing that disagreement regarding the times when medication was administered failed to state a constitutional upon which relief can be granted).

Here, the alleged one-time disagreement between Sonsini and defendant Barrette about the timing of the administration of his medication is insufficient to

---

[5]  In his brief, Sonsini asserts that defendant Barrette "on more than one occasion" was deliberately indifferent and negligent.  "Although a court on a motion to dismiss ordinarily 'must accept the allegations in the complaint as true,' it is not compelled to accept assertions in a brief without support in the pleadings." *Chavarriaga*, 806 F.3d at 232 (quoting *Morrow v. Balaski,* 719 F.3d 160, 165 (3d Cir. 2013)).  "After all, a brief is not a pleading." *Id.*  Thus, we do not accept the factual assertions in Sonsini's brief that do not appear in his amended complaint.

raise an inference that Barrette was deliberately indifferent to a serious medical need of Sonsini.  Thus, the amended complaint fails to state an Eighth Amendment claim against defendant Barrette upon which relief can be granted.

Sonsini also mentions that Fifth Amendment in his amended complaint.  It is not clear from the amended complaint, however, against whom Sonsini is attempting to assert a Fifth Amendment claim.  But in his brief, Sonsini mentions that Fifth Amendment in connection with, among others, defendant Barrette.

The Fifth Amendment provides, in pertinent part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  The Due Process Clause of the Fifth Amendment, however, applies only to the federal government and federal officials. *Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 237 (M.D. Pa. 1995).  "It does not apply to the acts or conduct of the states, their agencies, subdivisions, or employees." *Id.*

Accordingly, the Fifth Amendment is not applicable in this case because the defendants here, including defendant Barrette, are not federal actors.  Thus, the complaint fails to state a Fifth Amendment claim upon which relief can be granted against defendant Barrette or any of the other defendants.

### (v).  Defendants Loyola, Nasr, and Eby.

Defendants Loyola and Nasr contend that the amended complaint fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted against them because the amended complaint contains no properly pleaded factual allegations against them.  Sonsini identifies defendants Loyola and Nasr as correctional officers at the LCCF. *Doc. 12* at 2, ¶¶ 16, 17.  And he makes conclusions regarding their liability.  As to defendant Loyola, Sonsini concludes:

> Alexa Loyola-Individual/Official capacities, violated the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania at L.C.C.F.  This includes but not limited to, civil conspiracy, negligence, harassment, abuse.  Did not intervene or rectify issues when notified.  Refused/Denied adequate nutrition.  Refused/Denied medical treatment/needs.  Denied Due Process.

*Id*. at 20, ¶ IV.C.16.  Similarly, as to defendant Nasr, Sonsini concludes:

> Correctional Officer known as Nasar or Nasir,-Individual/Official capacities, allowed and/or took part in violation(s) of the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania at L.C.C.F.  Did not intervene or rectify issues when notified.  Refused/Denied adequate nutrition.  Refused/Denied medical treatment/needs.  Took part in harassment.

*Id*. at 20, ¶ IV.C.17.

Sonsini fails, however, to allege any facts as what defendants Loyola and Nasr actually did or did not do that violated his rights.  For example, he does not allege how they allegedly harassed him, how they denied him medical treatment,

43

or how that denied him adequate nutrition.  Because the amended complaint

contains no well-pleaded factual allegations regarding defendants Loyola and Nasr,

the amended complaint fails to state a 42 U.S.C. § 1983 claim upon which relief

can be granted against them.[6]

Similarly, Sonsini identifies defendant Eby as a correctional officer at the

LCCF. *Doc. 12* at 3, ¶ 21, and he makes conclusions regarding Eby's liability:

> Correctional Officer, EBY-Individual/official capacities,
> allowed and/or took part in violation(s) of the Constitution of
> the United States and the Constitution of the Commonwealth of
> Pennsylvania at L.C.C.F.  This includes but not limited to, civil
> conspiracy, negligence, premises liability.  Did not intervene or
> rectify issues when notified.  Did not properly inspect gym of
> hazards.  Refused/Denied adequate nutrition. Denied Due
> Process.

*Id*. at 21, ¶ IV.C.21.  Sonsini also alleges that defendant Eby was working in

central control on February 17, 2017,  when he was not provided with an

"alternative or bland tray." *Id*. at 14, ¶ IV.12.C.  But Sonsini does not allege facts

from which it can reasonably be inferred that defendant Eby was personally

---

[6]  Sonsini includes additional factual assertions in his brief regarding defendants
Loyola and Nasr.  As noted above, *see supra*. n.5, we do not accept factual
assertions in Sonsini's brief that do not appear in his amended complaint.  We do
note, however, that in his brief Sonsini suggests that defendant Loyola violated the
Fourth Amendment in connection with the search of his cell.  In the event that
Sonsini files a second amended complaint, he should be aware that "prisoners have
no legitimate expectation of privacy" in their cells, and "the Fourth Amendment's
prohibition on unreasonable searches does not apply in prison cells." *Hudson v.
Palmer*, 468 U.S. 517, 530 (1984).

involved in denying him an appropriate tray on that date.  And because "[i]n advancing any § 1983 claim against prison officials, a plaintiff may not rely solely on a *respondeat superior* theory of liability," *Dooley*, 957 F.3d at 374, Eby cannot be liable under § 1983 merely because he was working in central control when an alleged violation of Sonsini's right occurred.  Thus, the amended complaint fails to state a 42 U.S.C. § 1983 claim against defendant Eby upon which relief can be granted.[7]

### (vi).  Defendants Folton and Kane.

Defendants Folton and Kane, members of the LCCF culinary staff, contend that the amended complaint fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted against them.  Folton and Kane concede that Sonsini alleges that they knew of his dietary restrictions and failed to provide him with alternative meals. *Doc. 15* at 9.  They contend, however, that because Sonsini does not allege that his dietary restrictions were motivated by a sincerely held religious belief, he fails to state a First Amendment claim upon which relief can be granted.  True.  But it does not appear that Sonsini has attempted to plead a First Amendment

---

[7]  Sonsini includes additional factual assertions in his brief regarding defendant Eby, but we again note, *see supra*. nn.5, 6, we do not accept the factual assertions in Sonsini's brief that do not appear in his amended complaint.

claim based on his diet.  Rather, as defendants Folton and Kane acknowledge, Sonsini "suggests his dietary restrictions were medically-based." *Doc. 15* at 9.

As set forth above, to state an Eighth Amendment claim upon which relief can be granted,[8] a plaintiff must allege facts from which it can reasonably be inferred that the defendant acted with deliberate indifference to his serious medical needs. *Estelle,* 429 U.S. at 104 (1976).  "[A] special diet [can] constitute a serious medical need." *Molley v. CFG Health Sys.*, No. CIV.A. 10-5266 NLH, 2012 WL 1134817, at *4 (D.N.J. Apr. 3, 2012).  Defendants Folton and Kane contend, however, that Sonsini fails to state an Eighth Amendment claim upon which relief can be granted because he has not alleged that a medical professional ordered his dietary restrictions and he has not alleged any medical condition requiring such restrictions. *See doc. 15* at 9–10 (citing *Molley,* 2012 WL 1134817, at *4 ("Although it is possible that a special diet could constitute a serious medical need,

---

[8]  In his brief, Sonsini does not focus on his constitutional claims.  Rather, he asserts that defendants Folton and Kane (as well as defendant Eby) "are responsible for the safety conditions in the gym where the plaintiff slipped and fell in a puddle of water in the middle of the gym floor, this being part of the premises." *Doc. 20* at 3.  And he contends, "Defendant's should be held accountable for Tort Action(s) of Negligence, Passive Negligence, Civil Conspiracy, Premises Liability, Personal Liability, Vacarious [sic] liability, Secondary Liability, Americans with Disabilities Act and/or the Rehabilitation Act." *Id.*  Given that Sonsini is proceeding *pro se* and construing the amended complaint liberally, we nevertheless construe the amended complaint as attempting to state an Eighth Amendment claim against defendants Folton and Kane based on his diet.

plaintiff has not stated why he needed to be on that diet or what medical condition he has that would necessitate such a diet. Accordingly, plaintiff has not plead sufficient facts in support of a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment.")).

But Sonsini alleges facts suggesting that his dietary restrictions were prescribed by a nurse due to his allergies. Sonsini alleges that on the day that he arrived at the LCCF, he spoke to defendant Garbaz, a nurse, about his "medical disability/restriction(s)" with regard to his housing assignment and with regard to his dietary restrictions. *Doc. 12* at 6, ¶ IV.2. Garbaz said she would check Sonsini's medical file that was transferred with him. *Id*. Garbaz gave Sonsini two "Special Needs Requisition Slips." *Id*. at 6, ¶ IV.3. One of those slips dealt with Sonsini's dietary restrictions, and it stated, "no chicken, and no fish," and "d/t allergies documented" by SCI Camp Hill. *Id*. Garbaz initialed that slip and dated it October 13, 2016. *Id*. After Sonsini pointed out that Garbaz had not included "no turkey and no pork" on the dietary slip, Garbaz responded that the LCCF does not serve pork and it is serves turkey only on Thanksgiving. *Id*.

Pointing to the allegations regarding defendant Garbaz, defendants Folton and Kane contend that it was a prison nurse who allegedly refused to put Sonsini on a special diet in the first place, and, according to Folton and Kane, they cannot be deliberately indifferent for failing to intervene in medical decisions made by

47

medical providers.  But accepting the factual allegations in the amended complaint as true and construing those allegations in a light favorable to the plaintiff, as we must when deciding a motion to dismiss, the amended complaint can reasonably be construed as alleging that defendant Garbaz did in fact approve Sonsini's special diet and provided Sonsini documentation of such.  And given that Sonsini alleges that Folton and Kane knew of his dietary restrictions, but they failed to provide him with alterative meals in accordance with those restrictions, the amended complaint states an Eighth Amendment medical claim upon which relief can be granted against defendants Folton and Kane.

### (vii).  Defendant Davis.

Defendant Davis contends that the amended complaint fails to state a 42 U.S.C. § 1983 claim against her upon which relief can be granted.  She asserts that the majority of Sonsini's allegations regarding her are that she refused to provide him with clerical support, including making copies of his medical records and other documents.  And she contends that failing to make such copies is not a constitutional violation.  In response, Sonsini asserts that he does not dispute that defendant Davis was not legally required to make copies for him, and he included such allegations in his amended complaint to inform the court and the defense "in case [he] was asked to provide proof of action(s) taken for discovery purposes."

*Doc. 20* at 4.  Given that Sonsini disclaims any intent to hold defendant Davis liable for failing to make copies for him, we move on to Sonsini's other factual allegations regarding defendant Davis.

Sonsini alleges that defendant Davis denied his request to personally deliver one of his request slips to defendant Matias. *Doc. 12* at 11, ¶ IV.7.I.  Davis did, however, provide Sonsini an envelope for his paperwork, and she said she would drop the envelope in Matias's box. *Id*.  This simply does not rise to the level of a constitutional violation.

Sonsini also alleges that on February 6, 2107, he wrote to defendant Davis requesting to be allowed a call to Attorney Deiderick. *Id*. at 16, ¶ IV.13.E.  The next day, Davis responded: "We do not do personal calls." *Id*.  According to Sonsini, the call "was to [his] attorney for legal purposes, not personal." *Id*.  Based on these allegations and construed liberally, the amended complaint may be seen as asserting an access-to-the courts claim,[9] a First Amendment, and a Sixth Amendment claim against defendant Davis based on not allowing this telephone call.

---

[9]  "The right of access to the courts is sourced from both 'the First and Fourteenth Amendments,' and is typically framed as a due process right in the inmate context, but in other contexts as 'an aspect of the First Amendment right to petition the Government for redress of grievances[.]'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 n.17 (3d Cir. 2018) (citations omitted).

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  There are two general categories of actionable federal claims based upon an alleged denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).

The first category is forward-looking claims. *Id.*  The essence of such a claim is that official action is frustrating the plaintiff in preparing or filing a legal action at the present time. *Id.*  The opportunity to litigate "has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.*

The second category is backward-looking claims. *Id.* at 413–14.  Such a claim does not look forward to future litigation, "but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* at 414 (footnotes omitted). "The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.*

The ultimate justification for recognizing each kind of access claim is the same. *Id.*  "Whether an access claim turns on a litigating opportunity yet to be

gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414–15. The right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. Therefore, a plaintiff must establish an actual injury by identifying a nonfrivolous, arguable underlying claim blocked or lost by the alleged denial of access to the courts. *Id.* The underlying cause of action, whether anticipated or lost, is an element of the access claim. *Id.*

In the prison setting, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). Rather, in the prison setting, actual injury is the loss of, or inability to pursue, a nonfrivolous claim that relates to a challenge, direct or collateral, to an inmate's conviction or relates to a challenge to the conditions of confinement. *Id.* at 354–55. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. at 355 (italics in original).

Sonsini does not allege that because he was not allowed to call Attorney Deiderick one time, he lost or was unable to pursue a nonfrivolous claim relating to his conviction or to a challenge to his conditions of confinement. Thus, the amended complaint fails to state an access-to-the-courts claim upon which relief

51

can be granted because Sonsini does not allege that he was actually injured by defendant Davis's refusal of the phone call.

Similarly, the amended complaint fails to state a Sixth Amendment claim upon which relief can be granted.  The Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," U.S. Const. amend. VI.  The Sixth Amendment is only implicated in the criminal context. *See Wolff v. McDonnell*, 418 U.S. 539, 576 (1974) ("As to the Sixth Amendment, its reach is only to protect the attorney-client relationship from intrusion in the criminal setting . . . .").  Here, Sonsini does not allege that the phone call had any connection to a criminal case or that he was injured in connection with a criminal case because of the defendant Davis's refusal to allow the phone call.  Thus, the amended complaint fails to state a Sixth Amendment claim upon which relief can be granted.

The amended complaint also fails to state a First Amendment free speech claim upon which relief can be granted.  Prisoners have a "right to communicate with people outside prison walls, and 'a telephone provides a means of exercising this right.'" *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (quoting *Valdez v. Rosenbaum,* 302 F.3d 1039, 1048 (9th Cir.2002)).  But prisoners do not have a right to "'unlimited telephone use,' and reasonable restrictions on telephone

privileges do not violate their First Amendment rights." *Id*. (quoting *Washington v. Reno,* 35 F.3d 1093, 1100 (6th Cir.1994)).

Here, Sonsini complains that he was denied a telephone call on one occasion. Such a one-time denial of a phone call without more does not violate the First Amendment. *See Mckinney v. Cucinella*, No. 15-7442 (KM) (MAH), 2016 WL 3191241, at *4 (D.N.J. June 2, 2016) (concluding that the plaintiff not being "permitted a phone call to one particular person on one particular day" "does not rise to the level of a constitutional violation"); *Nelson v. D.C.*, 928 F. Supp. 2d 210, 215 (D.D.C. 2013) ("The fact that the Plaintiff was denied one telephone call and stationery for the brief time that he was in the Safe Cell fails to implicate the First Amendment's right of free speech or right to redress grievances.").

In sum, the amended complaint fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted against defendant Davis.

### 2. The ADA and RA.

Sonsini mentions the ADA and RA in his amended complaint. In their brief in support of their motion to dismiss, the Lebanon County defendants do not address Sonsini's ADA and RA claims. In their reply brief, however, they contend that Sonsini's claims under the ADA and RA should be dismissed. "A reply brief is not the appropriate forum in which to raise new issues and the court need not

address issues raised for the first time therein." *Bell v. Lackawanna Cty.*, 892 F. Supp. 2d 647, 688 n.41 (M.D. Pa. 2012). Although the Lebanon County defendants did not properly raise their argument in their brief in support, we will nevertheless dismiss the ADA and RA claims under our authority to dismiss a claim brought by a prisoner with respect to prison conditions under federal law for failure to state a claim upon which relief can be granted. *See* 42 U.S.C. § 1997e(c)(1).

"Congress enacted the ADA in 1990 as a 'clear and comprehensive national mandate' designed to eliminate discrimination against individuals with physical and mental disabilities across the United States." *McGann v. Cinemark USA, Inc.*, 873 F.3d 218, 221 (3d Cir. 2017) (quoting 42 U.S.C.A. § 12101(b)(1)). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1). Similarly, Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "With limited exceptions, the same legal principles govern ADA and RA claims." *C.G. v.*

54

*Pennsylvania Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013) (footnote omitted).[10]  Thus, we analyze the ADA and RA claims together under the rubric of the ADA.

To establish "a claim under Title II of the ADA, a person 'must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'" *Haberle v. Troxell*, 885 F.3d 170, 178–79 (3d Cir. 2018) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)).

Both the ADA and the RA prohibit "*discrimination* on the basis of disability without requiring exclusion *per se.*" *Chisolm v. McManimon,* 275 F.3d 315, 330 (3d Cir. 2001) (italics in original).  Under the ADA and RA, a qualified disabled person "'must be provided with meaningful access'" to the program. *C.G.,* 734 F.3d at 237 (quoting *Alexander v. Choate,* 469 U.S. 287, 301 (1985)).  Both the ADA and the RA also require reasonable accommodations for the disabled.

---

[10]  "Causation standards are different under the ADA and RA—under the RA, the disability must be the sole cause of the discriminatory action, while the ADA only requires but-for causation." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 291 n.25 (3d Cir. 2019).  Another "difference between the ADA and RA is that to bring a claim under the RA, a plaintiff must show that the allegedly discriminating entity receives federal funding." *C.G.*, 734 F.3d at 235 n.10.

*Muhammad v. Court of Common Pleas of Allegheny Cnty.,* 483 F. App'x 759, 763 (3d Cir. 2012) (stating that "a plaintiff can assert a failure to accommodate as an independent basis for liability under the ADA and RA").

Although Sonsini mentions the ADA and RA throughout his amended complaint, the amended complaint does not contain a count setting forth a claim under the ADA and RA.  And Sonsini does not clearly allege that he had a disability or what the disability was.  He also does not allege from what services, programs, or activities for which he was qualified he was excluded.  In other words, Sonsini does not specify the conduct that forms the basis of his ADA and RA claims.  Thus, the amended complaint does not put the defendants on notice of the basis of Sonsini's ADA and RA claims.  Accordingly, the amended complaint fails to state an ADA and RA claim upon which relief can be granted.

As discussed below, we will grant Sonsini leave to file a second amended complaint.  Should Sonsini filed a second amended complaint and should he include an ADA or RA claim, Sonsini should note that "[o]nly public entities are subject to Title II" of the ADA. *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015).  Thus, individuals cannot be liable under Title II of the ADA. *Ndaula v. Clinton Cty. Corr. Facility*, No. 1:20-CV-1160, 2020 WL 4570000, at *4 (M.D. Pa. Aug. 7, 2020).  Nor can individuals be liable under Section 504 of the RA. *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may

be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals.").

### B.  State Law Claims.

In their brief in support of their motion to dismiss, the Lebanon County defendants do not address any of Sonsini's state law claims.  In their reply brief, however, they contend that Sonsini's claims under the Pennsylvania Constitution should be dismissed because no private cause of action exists under the Pennsylvania Constitution.[11]  Again, as set forth above, "[a] reply brief is not the appropriate forum in which to raise new issues and the court need not address issues raised for the first time therein." *Bell*, 892 F. Supp. 2d at 688 n.41. Nevertheless, because "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution," *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687–88 (3d Cir. 2011), we will dismiss Sonsini's claims for

---

[11] Because the Lebanon County Defendants do not address any of Sonsini's state law claims other than the claims under the Pennsylvania Constitution, neither do we.

compensatory damages under the Pennsylvania Constitution with prejudice.[12]

Nominal damages, however, may be available under the Pennsylvania

Constitution. *O'Donnell v. Cumberland Cty.*, 195 F. Supp. 3d 724, 730 (M.D. Pa.

2016).  Thus, we will not dismiss Sonsini's request for nominal damages.[13]


### C.  Unserved Defendants.

In their reply brief, the Lebanon County Defendants contend the court

should dismiss all the other defendants under Fed. R. Civ. P. 4(m) because they

have not been served.[14]  Rule 4(m) of the Federal Rules of Civil Procedure

provides, in pertinent part:

> If a defendant is not served within 90 days after the
> complaint is filed, the court—on motion or on its own after
> notice to the plaintiff—must dismiss the action without
> prejudice against that defendant or order that service be made
> within a specified time.  But if the plaintiff shows good cause
> for the failure, the court must extend the time for service for an
> appropriate period.

---

[12]  "Although monetary relief is barred for claims under the Pennsylvania
Constitution, equitable remedies are available." *Id.*  As discussed below, however,
Sonsini's claims for equitable relief are moot given that he is no longer
incarcerated at the LCCF.

[13]  Sonsini requests nominal damages in the amount of $75,000 from each
defendant.  Nominal damages, however, are limited to $1.00. *Nicholas v.
Pennsylvania State Univ.*, 227 F.3d 133, 146 (3d Cir. 2000).

[14]  The  Lebanon County Defendants contend that they did not raise this argument
in their opening brief because at the time they filed that brief, the 90-days period
for service under Fed. R. Civ. P. 4(m) had not yet expired.

More than 90 days have passed since the case was removed to this court and defendants Matias, Cresini, Powers, Ardire, Santoni, Garbaz, Clements, Nurse Tammy, and the John and Jane Doe defendants have not been served.  Given, this we will dismiss these defendants without prejudice.

Should Sonsini again name any of these defendants in a second amended complaint, we note that although the plaintiff is usually "responsible for having the summons and complaint served within the time allowed by Rule 4(m)," Fed. R. Civ. P. 4(c)(1), when a plaintiff is authorized to proceed *in forma pauperis* under 28 U.S.C. § 1915, the court must order the United States Marshal to make service, Fed. R. Civ. P. 4(c)(3).  Here, Sonsini has not been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915, but he was granted leave to proceed *in forma pauperis* in the state court before the defendants removed the case to this court. *See doc. 1-6* at 12.  If Sonsini names any of the unserved defendants in a second amended complaint, he may move to proceed *in forma pauperis* under 28 U.S.C. § 1915, and if he is granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915, and if he identifies the defendants sufficiently so that the Marshal can make service, we will order the Marshal to make service.

### D.  Relief Sought.

The Lebanon County Defendants contend that Sonsini's requests for injunctive relief, punitive damages, and attorney's fees should be dismissed.

### 1.  Injunctive Relief.

The Lebanon County Defendants contend that Sonsini's requests for injunctive relief are moot because he is no longer incarcerated at the LCCF.  We agree.

Article III of the Constitution limits the judicial power of the United States to "cases" and "controversies." U.S. Constitution, art. III, § 2.  "This case-or-controversy limitation, in turn, is crucial in 'ensuring that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society.'" *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).  "And courts enforce it 'through the several justiciability doctrines that cluster about Article III,' including 'standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions.'" *Id*. (quoting *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009)).

This case involves mootness, which is "a doctrine that 'ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit,'" and which "is 'concerned with the court's ability to grant effective

60

relief.'" *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (quoting *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016), and *Cty. of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001)). "[F]ederal courts may adjudicate only actual, ongoing cases or controversies," *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990), and "[i]t is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'" *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). "Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Lewis,* 494 U.S. at 477).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982)). In other words, "a case is moot if 'developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief.'" *Hamilton*, 862 F.3d

at 335 (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698–99 (3d Cir. 1996)).

Once a prisoner who is complaining about his conditions of confinement is transferred from the prison about which he is complaining, the court cannot grant him meaningful prospective relief because he would not benefit from that relief. Thus, with limited exceptions not present here, his claims for injunctive and declaratory relief are moot. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (stating that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims"); *Marshall v. Pa. Dep't of Corr.*, 499 F. App'x 131, 134 (3d Cir. 2012) (concluding that because Marshall "asked for an injunction that restrains SCI–Mahanoy officials from violating his civil rights, but he has now been transferred out from under their control[,] . . . the District Court was unable to fashion any form of meaningful relief against these defendants, and thus the motion for injunctive relief was moot").

Here, because Sonsini is no longer incarcerated at the LCCF, his requests for declaratory and injunctive relief are moot, and those claims will be dismissed with prejudice.

## 2.  Punitive Damages.

The Lebanon County Defendants contend that Sonsini's request for punitive damages should also be dismissed.  Again, the defendants do not address Sonsini's state law claims.  Rather, they address only his constitutional claims brought under 42 U.S.C. § 1983.  And so, we do the same.

"A claim for punitive damages under Section 1983 requires allegations that the defendant acted with "a reckless or callous disregard of, or indifference to, the rights and safety of other.'" *Doe by Brown v. Harrisburg Sch. Dist.*, No. 1:19-CV-1027, 2020 WL 4584372, at *7 (M.D. Pa. Aug. 10, 2020) (quoting *Keenan v. City of Philadelphia*, 983 F.2d 459, 469-470 (3d Cir. 1983)).  "Thus, the punitive-damages inquiry requires an assessment of the defendant's state of mind." *Id*.  And it "requires a careful look at the unique facts of each case." *Id*.  Considering "the fact-intensive nature of the inquiry, courts in this district often defer punitive damages questions until after discovery." *Id*. (citing cases)

Here, the only 42 U.S.C. § 1983 claims against the Lebanon County Defendants that we have determined survive the motion to dismiss are Eighth Amendment claims against defendants Folton, Kane, and Hauck.  With respect to defendant Hauck, Sonsini alleges that Hauck was aware that Sonsini was not receiving medical care and medication and Hauck failed to act to correct such. And Sonsini alleges that Folton and Kane were aware of his dietary restrictions,

but they failed to provide him a diet in conformity with those restriction, and, as a result, he was only able to eat less than half of the meals served to him while he was at the LCCF.  Given these allegations, we cannot say as a matter of law that Sonsini is not entitled to punitive damages.  Thus, we will not dismiss Sonsini's request for punitive damages against defendants Folton, Kane, and Hauck.[15]

### 3.  Attorney's Fees.

A *pro se* litigant is not entitled to attorney's fees. *Kay v. Ehrler*, 499 U.S. 432, 438 (1991).  Sonsini is proceeding *pro se*.  Thus, he is not entitled to attorney's fees.  Accordingly, we will dismiss his request for attorney's fees with prejudice.

### E.  Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  In a civil rights action, the court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*

---

[15]  Should Sonsini filed a second amended complaint, we do note, however, that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Nor are punitive damages against the County available under the ADA or Section 504 of the RA. *Doe v. Cty. of Ctr., PA*, 242 F.3d 437, 457 (3d Cir. 2001).

Here, except as to Sonsini's requests for injunctive and declaratory relief and attorney's fees and his claim for compensatory damages under the Pennsylvania Constitution, we cannot say that amendment would be inequitable or futile in this case. Thus, we will grant Sonsini leave to file a second amended complaint. But because Sonsini is no longer incarcerated at the LCCF, he may not include claims for injunctive or declaratory relief in any second amended complaint. And because he is proceeding *pro se,* he may not include a claim for attorney's fees in any second amended complaint. Further, because there is not a private cause of action for compensatory damages under the Pennsylvania Constitution, he may not include such a claim in any second amended complaint.

Any second amended complaint must be titled as a second amended complaint and must contain the docket number of this case. Fed. R. Civ. P. 10(a). Sonsini "is advised that any [second] amended complaint must be complete in all respects." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). "It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Id*. "Also in general, an amended pleading—like [any second] amended complaint here—supersedes the earlier pleading and renders the original pleading a nullity." *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017). In other words, if a second amended complaint is filed, the first amended complaint will have no role in the future litigation of this case.

Any second amended complaint must also comply with the pleading requirements of the Federal Rules of Civil Procedure, including the requirements that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim," and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)–(3). Further, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). And "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id.*

Any amended complaint must also comply with Fed. R. Civ. P. 20(a)(2), which provides, in pertinent part, the defendants may be joined in one action "if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

## V.  Summary.

For the foregoing reasons, we will grant in part and deny in part the Lebanon County Defendants' motion to dismiss the amended complaint. We will dismiss all the 42 U.S.C. § 1983 claims against Lebanon County and the Lebanon County

Defendants in their official capacities.  We will also dismiss all the 42 U.S.C. § 1983 claims against the following defendants in their individual/personal capacities: Phillips, Ames, Litz, Wolgemuth, Karnes, Barrette, Loyola, Nasr, Eby, and Davis.  We will dismiss all the 42 U.S.C. § 1983 claims against defendant Hauck except the claim against defendant Hauck based on an ongoing denial of medical care.  We will dismiss all the 42 U.S.C. § 1983 claims against defendants Folton and Kane except the Eighth Amendment claim that they failed to provide him a diet in accordance with medical needs.  We will dismiss the ADA and RA claims against all the defendants.  We will dismiss with prejudice the claims for compensatory damages based on the Pennsylvania Constitution, but we will not dismiss the claims for nominal damages based on the Pennsylvania Constitution. We will dismiss the following defendants because they have not been properly served: Matias, Cresini, Powers, Ardire, Santoni, Garbaz, Clements, Nurse Tammy, and the John and Jane Doe defendants.  We will dismiss the claims for injunctive and declaratory relief and attorney's fees with prejudice.  Finally, except as to the claims for injunctive and declaratory relief and attorney's fees, we will grant Sonsini leave to file a second amended complaint.  An appropriate order will be issued.

_S/Susan E. Schwab_
Susan E. Schwab
United States Magistrate Judge